IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

COLLEEN SNYDER                                                    PLAINTIFF

      v.                                    CIVIL NO. 13-5194

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                   DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Colleen Snyder, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I. Procedural Background

Plaintiff protectively filed an application for DIB on April 20, 2011, alleging disability since August 1, 2009, due to: "bladder condition; shoulder pain; fatigue; depression; heart conditions; paralyzed stomach; arthritis; neuropathy; high cholesterol; and memory lapses." (Tr. 16, 177). For DIB purposes, Plaintiff's date last insured is June 30, 2015. (Tr. 18, 174). An administrative hearing was held on March 27, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 28-84).

By a written decision dated April 27, 2012, the ALJ found Plaintiff had the following severe impairments: "disorder of the back; headaches; and urinary incontinence." (Tr. 18). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the

-1-

level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except "she can occasionally climb, balance, crawl, stoop, and crouch. She can occasionally work overhead." (Tr. 18-19).

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work ("PRW") as a receptionist/office clerk/purchasing clerk. (Tr. 21, 77-81). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 21).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on July 13, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeals briefs, and the case is before the undersigned for report and recommendation. (Docs. 15, 16).

**II. Evidence Presented**

The evidence during the relevant time period is the following. Plaintiff visited her primary care physician, Dr. Robert Hull, on August 13, 2009, to discuss recent biopsies of her stomach and colon and the removal of colon polyps. Dr. Hull noted Plaintiff was doing well and assessed her with hyperlipidemia, acid reflux, and recurrent colon polyps. (Tr.  472). On August 18, 2009, Plaintiff returned with complaints of  neck pain. (Tr. 472). Dr. Hull noted she was experiencing muscle spasms in her neck, but her reflexes were good. He assessed her with acute torticollis ("wry neck"); prescribed ice, rest, and darvocet; and suggested Plaintiff "give it time and it should settle down." (Tr. 472).

Plaintiff complained of upper abdominal pain and nausea after eating fatty foods on November 23, 2009, and was diagnosed with dyskinesia. (Tr. 306-309). On December 7, 2009, Plaintiff had her gallbladder removed by Dr. Douglas Friesen. (Tr. 261-262). Plaintiff returned to the hospital on December 18, 2009, because she was having abdominal pain, and underwent a laparoscopy to close a leak from a small bile duct in her gallbladder bed. (Tr. 271-278). Plaintiff had a follow-up visit on December 29, 2009, and reported she was pain free and was eating a regular diet without difficulty. (Tr. 333).

On September 24, 2009, Plaintiff had an annual exam with Dr. Scott Smith. (Tr. 344-346). Her exam was normal, but Dr. Smith diagnosed Plaintiff with urinary incontinence because she complained of leaking urine onto herself and reported needing to change her clothes during the day. (Tr. 345). Plaintiff received a temporary Interstem device to treat her urinary incontinence in December 2009, which "was very successful in helping with improvement of her symptoms," according to Dr. Smith. (Tr. 347-348, 358). A permanent Interstem device was implanted on March 2, 2010, to control Plaintiff's urinary incontinence. (Tr. 358-359). Dr. Smith noted on March 8, 2010, that Plaintiff was doing well and was not experiencing leaking. (Tr. 351). At a follow-up in April, Dr. Smith reported Plaintiff was "very pleased" and "doing great with the occasional need for adjustments of the [Interstem] settings." (Tr. 355-356).

On February 22, 2011, Plaintiff went to the ER and was treated for chest pain. (Tr. 430-431). Her blood pressure, cardiac enzymes, and EKG were normal, but an x-ray of her chest indicated "mild hyperexpansion of her lungs without acute pulmonary abnormalities." (Tr. 430, 444-445). She was diagnosed with acid reflux, chronic obstructive pulmonary disease, and a cold. (Tr. 430-431, 466). She was instructed to stop smoking and take her antidepressant. (Tr. 430).

-3-

On May 2, 2011, Plaintiff saw Dr. Hull, who noted Plaintiff "has been doing well ... she continues to take her medications, watch her low cholesterol diet, and exercise with no new problems." (Tr. 458). Plaintiff reported she did not have any current urinary, bladder, or chest problems. (Tr. 458-460). Dr. Hull noted Plaintiff continued to smoke about a pack a day, but was walking thirty minutes daily for exercise, and assessed her with hypercholesterolemia; hyperlipidemia; hypertension; esophageal reflux; depressive disorder; and nicotine dependence. (Tr. 458-459). Dr. Hull indicated her conditions were treated with Lipitor, Celexa, Klonopin, Claritan, Prilosec, and Carafate. (Tr. 458-460).

Dr. Jerry Thomas, a State non-examining physician, submitted a physical RFC assessment dated June 15, 2011. (Tr. 499-505). Dr. Thomas opined Plaintiff could lift ten pounds frequently and twenty pounds occasionally; sit or stand about six hours during an eight hour workday; could push or pull without limitation; and that she had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 499-502).

On June 27, 2011, Plaintiff saw Dr. Hull to address new ear pain and balance problems. (Tr. 510). Dr. Hull reviewed Plaintiff's lab work and examined her, but could not determine a reason for her ear pain and referred her to a neurologist. (Tr. 510-512).

In August 2011, Plaintiff saw Julie Slavik, PA-C, at Ozark Orthopaedics to evaluate her neck and shoulder pain. (Tr. 536-537). Ms. Slavik examined Plaintiff and found Plaintiff had normal cervical range of motion and 5/5 strength in her extremities. An x-ray of Plaintiff's spine showed only mild degenerative changes at the C5-6 level. (Tr. 536-537). Ms. Slavik opined Plaintiff had minimal degenerative disc disease, discokgenic neck pain, left arm pain, and prescribed gabapentin. (Tr. 537).

-4-

On September 12, 2011, Dr. Bill Payne, a State non-examining physician, reviewed the new information in Plaintiff's file and affirmed Dr. Thomas's physical RFC assessment. (Tr. 521).

Plaintiff established treatment with Dr. Dimitry Fomin, a neurologist, in October 2011 to evaluate her neurological problems. Plaintiff told Dr. Fomin she was having joint pain and dizziness, sinus pain, and some shortness of breath, but no chest or ear pain. (Tr. 522-525). On October 17, 2011, Plaintiff underwent a head CT, electroencephalogram, and carotid doppler ultra sound, which were normal. (Tr. 538).

On October 26, 2011, Plaintiff had a follow-up with Ms. Slavik, who documented Plaintiff had mild degenerative disc disease at the C5-6 level with mild lateral recess narrowing and no significant spinal stenosis, but referred her for further diagnostic testing. (Tr. 535). On November 16, 2011, Plaintiff saw Dr. Barbara Bess for a nerve conduction study and electromyogram. (Tr. 530-532). After reviewing the study, Dr. Bess opined "there is no electrodiagnostic evidence of compression neuropathy, cervical radiculopathy or brachial plexopathy to explain the patient's symptoms." (Tr. 532).

Plaintiff saw Dr. Fomin on October 27, 2011, to discuss her test results. (Tr. 548). Dr. Fomin performed an exam that was normal except for tenderness in her neck and shoulders, discussed the recent test results, and assessed Plaintiff with a diagnosis of frequent falls (likely secondary to cervical spine derangement) and migraines with aura. (Tr. 549-550, 560-561).

On November 29, 2011, Plaintiff had a follow-up with Ms. Slavik and reported gabapentin was working to manage her arm pain. (Tr. 529). Ms. Slavik reviewed Plaintiff's studies and performed an exam, which showed she had normal upper extremity range of motion. Ms. Slavik referred her for physical therapy treatment based on "mild cervical degenerative disc disease," and

indicated the physical therapist should help Plaintiff establish a home exercise program. (Tr. 528-529).

On December 1, 2011, Plaintiff saw Dr. Fomin to follow-up on her neck pain, back pain, falling episodes, and migraines. Dr. Fomin performed an exam that was normal except for tenderness in her neck and shoulders. (Tr. 538-542). Plaintiff was assessed as ambulating with a normal gait and stance, displaying a full range of active motion, and having normal motor strength. (Tr. 541). Dr. Fomin advised Plaintiff to follow through with her physical therapy and begin taking her gabapentin consistently. (Tr. 540-541).

Plaintiff returned to Dr. Hull on December 29, 2011, for a general follow-up and reported she was not having any dizziness, stomach pain, musculoskeletal pain, or headaches; had been watching her diet; and exercising regularly, although she was having sinus problems about once a week. (Tr. 563). Dr. Hull prescribed loratadine, ibuprofen, and Tylenol, and advised Plaintiff to continue exercising and to drink plenty of fluids. (Tr. 564).

**III. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case

differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

### III. Discussion

On appeal, Plaintiff argues the ALJ: (1) failed to adequately develop the record; (2) should have determined additional impairments were severe; (3) should have included additional RFC limitations; (4) and erred in determining Plaintiff could perform her PRW. (Doc. 15 at pp. 5-13).

#### A. Development of the Record

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial."). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989).

Plaintiff believes the ALJ should have ordered physical and mental consultative examinations. (Doc. 15 at p. 6). Defendant responds that Plaintiff was responsible for presenting her case, and the record did not establish an examination was necessary to facilitate a decision. (Doc. 16 at p. 4).

The undersigned has carefully reviewed the record as a whole, which includes significant diagnostic reports, the records and statements of specialists, and the opinions of the State's

consultative physicians, and believes it contains sufficient evidence for the ALJ to evaluate Plaintiff's disability claims.

Evidence in the record supports the ALJ's decision that a mental health consultative examination was not justified. Plaintiff was diagnosed with depression and anxiety by Dr. Hull, who prescribed Celexa and Klonpin before and during the relevant time period. (Tr. 458-459, 464, 466-467, 469-470, 477, 482, 510-511). Plaintiff did not seek specialized mental health treatment, but sought routine prescription refills without requesting a medication change or making a complaint, which indicates her treatment was effective. (Tr. 458-460, 477, 510-516, 522-525). On her Function Report, Plaintiff indicated she did not have problems getting along with others, or difficulties with understanding, memory, and following instructions. (Tr. 205). At Plaintiff's medical visits during the relevant time period, she was documented as having no mental health complaints, demonstrating appropriate mood and affect, and exhibiting no mental or cognitive problems. (Tr. 510-511, 524, 536, 541, 563-564).

Similarly, the record contained adequate evidence to determine Plaintiff's physical impairments. Plaintiff underwent significant testing for pain in her shoulder and neck, which ruled out serious structural damage. (Tr. 528, 530-532, 538). Plaintiff's urinary problems were also well documented, and revealed her Interstem placement was effective. (Tr. 347-348, 355, 358-359). Plaintiff's daily activities and social functioning also provided substantial evidence for the ALJ to evaluate Plaintiff's physical impairments. For instance, Plaintiff was exercising about 30 minutes a day and taking trips with her husband to his job sites. (Tr. 214, 458 513).

A consultative examination is a discretionary tool that the ALJ can use on a case-by-case basis. The regulations do not require that the ALJ order a consultative evaluation of every alleged

impairment, but simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. 20 C.F.R. § 1519a; 20 C.F.R. § 416.919a; Matthews, 879 F.2d at 424. The undersigned also notes Plaintiff neither requested a consultative examination during the disability determination process nor has identified how the absence of a consultative examination is prejudicial. Remand is only required when failure to develop the record further is prejudicial. See Onstead v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993).

Accordingly, the undersigned finds the ALJ fully and fairly developed the record. See Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

**B. Severe Impairments**

Plaintiff argues the ALJ should have included "problems involving her upper extremities;" falling condition and headaches; depression; and anxiety as severe impairments. (Doc. 15 at p. 8).

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989).

Although Dr. Hull diagnosed Plaintiff with anxiety and depression and prescribed Klonopin and Celexa, the record shows Plaintiff's depression and anxiety were controlled by medications. (Tr.

458-460, 477, 510-516, 522-525). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010).

The ALJ also discussed Plaintiff's shoulder pain in combination with Plaintiff's spine and neck pain before including "disorder of the back" as a severe impairment. (Tr. 18, 20). The ALJ also discussed Plaintiff's headaches and "falling disorder" in combination, describing the condition as a "neurological impairment" and discussing her conservative treatment and unremarkable diagnostic tests. (Tr. 20).

The record shows Plaintiff sought treatment for neck, back, and shoulder pain in 2011, but a nerve conduction study ruled out a neurological cause. (Tr. 530-532). Similarly, examinations by Ms. Slavik and Dr. Fomin showed Plaintiff had only tenderness in her shoulder, normal range of motion, and normal grip strength. (Tr. 530-532, 536-537, 549-550, 560-561). While the record suggests Plaintiff's shoulder pain and headaches did not amount to a severe impairment, her conditions were still addressed by the ALJ in combination with her disc disease and back pain.

The ALJ properly considered all of Plaintiff's impairments, including the impairments that were found to be non-severe, and any error in failing to identify a particular impairment as severe was harmless. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006); see also 20 C.F.R. § 416.945(a)(2) (stating an ALJ must consider all of a claimant's medically determinable impairments, including impairments that are not severe); § 416.923 (stating an ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Accordingly, the undersigned finds the ALJ did not commit reversible error in determining Plaintiff's severe impairments.

-11-

### C. RFC

Plaintiff contends she cannot work because her arm condition prevents her from reaching; her urinary problems require frequent breaks; her falling episodes prevent her from standing; and her headaches will require absences from work; all of which, she states, the ALJ did not adequately accommodate in the RFC determination. (Doc. 15 at pp. 11-12).

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's residual functional capacity is a medical question, Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect her RFC. Id.

The record as a whole shows Plaintiff's anxiety, depression, and urinary problems were controlled with treatment and were not disabling. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). The record indicates Plaintiff had some residual shoulder pain from an injury from before the relevant time period, but had full range of motion and 5/5 grip strength. Plaintiff also reported gabapentin managed her shoulder pain. (Tr. 529, 540-541, 552). The ALJ addressed and

-12-

accommodated her shoulder pain by restricting her to occasional overhead reaching and sedentary work.

As for Plaintiff headaches and dizziness, a CT, EEG, and carotid doppler ultrasound did not uncover any specific conditions. (Tr. 538). Plaintiff's neurologist, Dr. Fomin, advised Plaintiff to exercise more and take her gabapentin consistently. (Tr. 540-541). At Plaintiff's most recent visit with Dr. Hull in December 2011, she indicated she was compliant with Dr. Fomin's treatment recommendations and was not having any dizziness or headaches. (Tr. 563).

A careful review of the record shows Plaintiff's conditions were minor or controlled with medications. Plaintiff's daily activities and treatment records indicated no serious medical problems, and medications controlled her mental problems. Conditions controlled by treatment or medications are not disabling. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009).

The opinions of the State's consulting physicians, who opined Plaintiff could perform light work, and Plaintiff's daily activities also support the ALJ's conclusions. (Tr. 201-206, 494-505, 521). On her Function Report, Plaintiff indicated she could care for her personal needs without assistance, could drive by herself, and had no problems getting along with others. (Tr. 201-205). At her hearing, she testified she could perform tasks like washing dishes by hand, often spent time with her family, and especially enjoyed playing with her grandchildren. (Tr. 73). She specifically described playing catch and babysitting her two-month-old grandchild. (Tr. 73-74). These activities are not consistent with disability. See e.g., Brown v. Astrue, 611 F.3d 941, 955-956 (8th Cir. 2010).

Based on the foregoing, the undersigned finds there is substantial evidence to support the ALJ's RFC findings.

-13-

### D. Past Relevant Work

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work. Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work does the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

1. The actual functional demands and job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61; Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(approving the two part test from S.S.R. 82-61).

The Court notes the ALJ relied upon the testimony of a VE. In response to a properly phrased hypothetical question, which included the limitations addressed in the RFC determination, the VE testified that the hypothetical individual would be able to perform Plaintiff's past relevant work of receptionist/office clerk/purchasing clerk. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at Steps Four and Five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work"); see also Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is

-14-

based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).

Accordingly, the undersigned finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work.

**IV. Conclusion:**

Based on the foregoing, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 3rd day of April, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE